UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DEANDRE MULLINS,

    Petitioner,        Case Number: 2:11-CV-14678
                 HON. ARTHUR J. TARNOW
v.

KENNETH MCKEE,

    Respondent.
                  /

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

  Petitioner Deandre Mullins, a prisoner in the custody of the Michigan Department of Corrections, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for four counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b, assault with intent to rob while armed, Mich. Comp. Laws § 750.89, and first-degree home invasion, Mich. Comp. Laws § 750.110a(2). The petition raises six claims for relief. Respondent, through the Attorney General's Office, has filed an answer in opposition to the petition arguing that some of the claims are procedurally defaulted and that all of the claims are meritless. For the reasons discussed, the Court will deny habeas corpus relief.

**I.  Background**

  Petitioner's convictions arose from the sexual assault of N.G. at her home in Detroit on December 26, 2007. N.G., who was 17 years old, testified that she was

awakened by a man standing over her with a knife to her throat. She screamed. He warned her that if she was not quiet he would kill her. He ordered her to take off her pants and underwear, which she did. He then fondled her, performed cunnilingus, forced her to perform fellatio, and raped her. After assaulting her, the man asked her where the money was kept. When she told him that she did not have any money, he threatened her and warned that if she was lying he would return. After the man left, she ran upstairs to her mother's bedroom. N.G.'s mother called the police. N.G. was taken to the hospital where a physical examination was performed and evidence collected for a rape kit. N.G. picked Petitioner from a photographic lineup about a week after the rape. She testified that she was 100% certain that the man depicted in the photograph was the man who raped her.

Brenda Mullins, Petitioner's mother, testified that she saw news reports in January 2008 about a series of break-ins in Detroit. She saw surveillance video of a break-in at one of the homes. Brenda recognized her son. She encouraged him to turn himself in to police, which he did. Petitioner was arrested. Brenda spoke to her son about the break-ins and rapes. He admitted to her that he had intercourse with the women who accused him of rape, but claimed that the acts had been consensual.

Cathy Carr was qualified as an expert in forensic biology and forensic DNA analysis. She obtained a DNA profile from the sperm contained in N.G.'s rape kit. She compared that to a DNA sample from Petitioner. Carr testified that the DNA profile obtained from the rape kit samples was consistent with the DNA sample from Petitioner.

She further testified that the likelihood of a random match in the African-American population between the two samples was one in 1,230 quintillion.

Petitioner testified in his own defense. He testified that at the end of November 2007, he met N.G. while he was walking home. He gave her his phone number. He testified that he and N.G. had consensual sex in her bedroom on December 26, 2007. He denied breaking into her home.

## II.     Procedural History

Petitioner was tried before a jury in Wayne County Circuit Court and convicted of four counts of first-degree criminal sexual conduct, assault with intent to rob while armed, and first-degree home invasion. On May 22, 2008, he was sentenced to concurrent terms of 285 months to 60 years for the first-degree criminal sexual conduct convictions and 285 months to 50 years for the assault with intent to rob while armed conviction, and a consecutive sentence of 141 months to 20 years for the first-degree home invasion conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. Appellate counsel raised a claim that the trial court improperly admitted other acts evidence. Petitioner filed a *pro per* supplemental brief raising these additional claims: trial court improperly allowed a witness to testify after the witness violated the trial court's sequestration order; trial counsel was ineffective in failing to request a change of venue and failing to move for closure of the courtroom; and the court erred in permitting the prosecution to play a surveillance videotape. The Michigan Court of Appeals affirmed

3

Petitioner's convictions. *People v. Mullins*, No. 286324, 2010 WL 99003 (Mich. Ct. App. Jan. 12, 2010). The Michigan Supreme Court denied leave to appeal. *People v. Mullins*, 488 Mich. 910 (Mich. 2010).

Petitioner then simultaneously filed a habeas corpus petition and a motion to hold the petition in abeyance while he exhausted additional claims in state court. The Court granted a stay. *Mullins v. McKee*, No. 2:11-cv-14678, 2011 WL 5515313 (E.D. Mich. Nov. 9, 2011).

Petitioner filed a motion for relief from judgment in the trial court. He raised two claims: (i) newly discovered evidence shows that the prosecution presented perjured testimony and withheld exculpatory evidence; and (ii) trial counsel was ineffective in failing to seek an expert in identification. The trial court denied the motion. 3/9/2012 Opinion and Order, ECF No. 12-16. The Michigan Court of Appeals denied Petitioner leave to appeal, *People v. Mullins*, No. 312358 (Mich. Ct. App. May 30, 2013), ECF No. 12-19. The Michigan Supreme Court also denied leave to appeal. *People v. Mullins*, 495 Mich. 913 (2013).

Petitioner returned to this Court and filed a motion to lift the stay and an amended petition. The Court granted Petitioner's motion and ordered Respondent to file an answer to the amended petition. 2/17/15 Order, ECF No. 10. Respondent filed a motion to dismiss on the ground that Petitioner failed to comply with the terms of the stay. ECF No. 11. The Court denied the motion and ordered Respondent to file an answer to the

petition. 8/3/15 Order, ECF No. 15. Respondent has filed an answer and the related Rule 5 materials.

The petition raises these claims:

I. Petitioner is entitled to a new trial where the trial court erred in admission of other acts evidence pursuant to M.R.E. 404(b).

II. One of the prosecution's witnesses sequestered from the courtroom heard evidence from one of the police reports and was allowed by the judge to still take the stand.

III. Petitioner's trial attorney was ineffective in failing to request a change of venue due to pretrial publicity and failing to seek to close the courtroom in order to prevent public exposure to information which, it was hoped, would be ruled admissible, and defendant's face was on the news two days before an impromptu photo lineup was done and the jury was exposed to pretrial publicity that was prejudicial to defendant.

IV. The court erred in permitting the prosecution to play a surveillance videotape for the jury.

V. Petitioner was denied his Fourteenth Amendment right to a fair trial where newly discovered evidence demonstrates that the prosecution withheld exculpatory evidence thereby committing fraud upon the court.

VI. Petitioner was denied his Sixth Amendment right to the effective assistance of trial counsel where counsel failed to seek an expert in identification and to explain the implausibility and scientific impossibility of the claims made by the complaining witnesses.

### III. Standard of Review

This habeas petition is reviewed under the exacting standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132,

110 Stat. 1214 (Apr. 24, 1996). Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the state adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal

6

justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted). To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact *and* that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Discussion

### A. Procedural Default

Respondent argues that several of Petitioner's claims are barred from federal habeas review because they are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at

525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claims.

### B. Other Acts Evidence (Claim I)

Petitioner argues that the trial court improperly admitted other acts evidence at trial. The trial court allowed two sexual assault victims, C.M. and M.K., to testify that they identified Petitioner as the person who broke into their respective homes and assaulted them. The trial court also allowed Yvonne Wells to testify that she found Petitioner in her kitchen in the middle of the night. He threatened her with a knife, but left before he could harm her. Petitioner's mother, with whom he often resided, lived within walking distance of Yvonne Wells and M.K. Petitioner worked a few blocks away from C.M.'s residence.

The Michigan Court of Appeals held that this testimony was properly admitted under state law. The state court reasoned that "the circumstances of the other acts evidence and the charged crimes were sufficiently similar to establish a common scheme, plan, or system." *Mullins*, 2010 WL 99003 at *2. The state court found the circumstances presented by each incident had a "concurrence of common features" indicative of a general plan: the uncharged and charged crimes were all committed within the same neighborhood and occurred within walking distance of Petitioner's mother's and girlfriend's homes; the manner in which Petitioner entered or attempted to enter each home was the same; Petitioner brandished a knife; and all of the incidents occurred at night. *Id.* The Michigan Court of Appeals also noted that the trial court's cautionary

8

instruction as to the proper use of the other acts evidence limited the potential for unfair prejudice to Petitioner. *Id.*

When an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness, it may violate due process and warrant federal habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). *See also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) ("[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.") (internal quotation omitted). The Supreme Court has declined to hold that the admission of "other acts" evidence is so extremely unfair that it violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352-53 (1990). The Court has discussed when other acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), but has not addressed the issue in constitutional terms. Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling*, 493 U.S. at 352. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). *Id.* at 513.

Given the state court's careful evaluation of whether the evidence supported a common scheme or plan, the trial court's curative instruction, and the absence of any

9

clearly established Supreme Court precedent prohibiting this type of testimony, the court cannot conclude that the admission of this evidence was unconstitutionally "egregious."

### C. Violation of Sequestration Order (Claim II)

Petitioner next seeks relief on the ground that prosecution witness Jesse Collins violated the court's sequestration order. Collins entered the courtroom at some time during the testimony of the first prosecution witness, police officer John Johnson. Defense counsel moved to exclude Collins from testifying. The trial court briefly questioned Collins on the record. Collins indicated that he heard approximately twenty minutes of Johnson's testimony. The trial court found no intentional violation of the sequestration order. The court also found that Officer Johnson's testimony was unrelated to Collins' testimony and therefore unlikely to influence Collins' testimony. The trial court further informed defense counsel that she could request a sidebar at any time during Collins' testimony if she felt his testimony was influenced by what he heard of Officer Johnson's testimony.

On direct appeal, the Michigan Court of Appeals found no error. The state appeals court echoed the trial court's conclusion that because the officer's and Collins' respective testimonies were unrelated "it was unlikely that [Collins'] testimony would be 'colored' by the officer's testimony or that he would attempt to 'conform' his testimony to the testimony given by the officer." *Mullins*, 2010 WL 99003 at *3.

There is no clearly established federal law requiring the sequestration of witnesses or a particular remedy when a sequestration order is violated. *See Pillette v. Berghuis*,

408 Fed. App'x 873, 882 (6th Cir. 2010). *See also Akrawi v. Jabe*, 979 F.2d 418, 423 (6th Cir. 1992) (finding no constitutional dimension to violation of sequestration order). The Michigan Court of Appeals' decision was based upon a careful review of the circumstances presented and was not contrary to or an unreasonable application of clearly-established federal law.

D. **Ineffective Assistance of Counsel Claim (Claims III & VI)**

Petitioner argues that he was denied the effective assistance of counsel. Specifically, he alleges that counsel was ineffective in failing to: (i) move for a change of venue; (ii) move for closure of the courtroom; (iii) move to exclude testimony from a witness who violated a sequestration order; and (iv) seek an expert in identification testimony.

An ineffective assistance of counsel claim has two components. *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Id.* at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. Id. at 694.

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. — , 134 S.

Ct. 10, 16 (2013). The standard for obtaining relief is "'difficult to meet.'" *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014), quoting *Metrish v. Lancaster*, 569 U.S. —, —, 133 S. Ct. 1781, 1786 (2013). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

First, Petitioner argues that his trial attorney was ineffective in failing to move for a change of venue based upon community-wide sentiment against him. The United States Supreme Court has held that a change of venue should be granted if prejudicial pretrial publicity jeopardizes a defendant's right to a fair trial by an impartial jury. *Irvin v. Dowd*, 366 U.S. 717, 722-24 (1961). Prejudice resulting from pretrial publicity can be presumed or actual. *Murphy v. Florida*, 421 U.S. 794, 799 (1975). Prejudice is presumed when adverse pretrial publicity is so pervasive or the influence of the media creates such a "circus atmosphere" in the courtroom that "[t]he proceedings [are] entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob." *Id.* at 799. Courts presume prejudice in such cases because "adverse pretrial publicity can create such a presumption of prejudice in a community that jurors' claims that they can be impartial should not be

12

believed." *Patton v. Yount*, 467 U.S. 1025, 1031 (1984). Cases of presumed prejudice from pretrial publicity are extremely rare, *Campbell v. Bradshaw*, 674 F.3d 578, 593 (6th Cir. 2012), occurring only when "an inflammatory circus-like atmosphere pervades both the courthouse and the surrounding community." *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007).

The Michigan Court of Appeals found "no saturation of the community, no widespread prejudice, and no need for a change of venue." *Mullins*, 2010 WL 99003 at *4. The Michigan Court of Appeals therefore concluded that counsel was not ineffective for failing to file what would have been a futile motion for a change of venue. *Id.* The record supports the state court's finding. During *voir dire*, the prosecutor asked jurors whether they had seen any media coverage about the case. One juror responded that he had seen news coverage but could set aside what he had seen and decide the case based only on the evidence presented at trial. Because a thorough *voir dire* was conducted and the jurors as seated exhibited no bias, counsel was not ineffective for failing to move for a change of venue. *See e.g. Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004).

Second, Petitioner challenges counsel's failure to move to close the courtroom to prevent public exposure of information it was hoped would be ruled inadmissible. Petitioner fails to identify the information he hoped would be ruled inadmissible or whether it was ultimately excluded. Absent this information, Petitioner has not established that his attorney was ineffective in failing to move to close the courtroom. In addition, "[t]he ability to waive a constitutional right does not ordinarily carry with it the

13

right to insist on the opposite of that right." *Singer v. United States*, 380 U.S. 24, 34-35 (1965). While a defendant may, under certain circumstances, waive his constitutional right to a public trial, "he has no absolute right to compel a private trial." *Id.* at 35. Petitioner has not shown a reasonable probability that such a motion would have been granted. Nor has Petitioner shown any specific way in which he was prejudiced by counsel's failure to act. Habeas relief is denied on this claim.

Third, Petitioner argues that counsel was ineffective in failing to move to exclude testimony from Jesse Collins after he violated a sequestration order. The record directly contradicts Petitioner's allegation. Defense counsel sought exclusion of Collins' testimony. As discussed above, the trial court found no basis for exclusion of the testimony. Habeas relief is denied.

Finally, Petitioner argues that defense counsel was ineffective in failing to retain an expert witness on identification "to explain the implausible and impossible claims made by the complaining witness." ECF No. 8, Pg. ID 52. "No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011). Counsel's decision not to call an expert witness on identification was eminently reasonable in light of Petitioner's testimony that he had consensual sex with the victim. It would have been inconsistent with Petitioner's defense for an expert witness to question

14

the victim's identification testimony when Petitioner himself admitted he was the person in her home. Habeas relief is denied on this claim.

### E. Surveillance Videotape (Claim IV)

Petitioner's fourth claim for habeas corpus relief challenges the trial court's admission of a surveillance videotape on the ground it lacked a proper foundation. The Michigan Court of Appeals held that the testimony of the homeowner who recorded the videotape evidence was sufficient to lay a proper foundation under the Michigan Rules of Evidence. *Mullins*, 2010 WL 99003 at *4. The Michigan Court of Appeals also rejected Petitioner's claim that the videotape was inadmissible hearsay. The state court found that the conduct depicted in the videotape, an attempted breaking and entering, was not intended by Petitioner to be an assertion and, therefore, was not a statement under the hearsay rules. *Id.*

"Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). Petitioner has failed to show that admission of the video recording violated any right under the Constitution or denied him his right to a fair trial. It was authenticated by the homeowner who recorded the video and the state court reasonably concluded that Petitioner did not intend the actions depicted in the video to be an assertion. Habeas relief is denied on this claim.

### F. Prosecutorial Misconduct Claim (Claim V)

Petitioner next seeks habeas corpus relief on the ground that the prosecutor improperly withheld exculpatory information and presented perjured testimony at trial regarding identification. This claim arises from the testimony of C.M., a Rule 404(b) witness, who testified that Petitioner sexually assaulted her on July 1, 2007. Petitioner alleges that C.M. met with a police officer, Jose Ortiz, prior to the photographic line-up during which she identified Petitioner as her attacker. Petitioner alleges that during that meeting, C.M. told the officer that she never saw her assailant's face, and that she and the police officer colluded to falsely identify Petitioner as the perpetrator. Petitioner bases this argument on notes written by the assistant prosecuting attorney detailing a conversation she had with C.M. on November 16, 2009, approximately 18 months after Petitioner's sentencing. According to the prosecutor's notes, C.M. admitted that she did not see the perpetrator's face, yet identified him at a photographic lineup and at trial. ECF 8, Pg. ID 60-61. Further, C.M. stated that she selected the photograph of Petitioner because she had been directed by Officer Ortiz to do so. *Id*. In response to this information, the prosecutor asked that an investigation be conducted. *Id.* at Pg. ID 62. The investigator interviewed C.M. and Officer Ortiz. C.M. stated that she did not meet with Officer Ortiz prior to the photographic lineup and he did not tell her which photograph to select. *Id.* at Pg. ID 63. Officer Ortiz told the investigator that he carefully explained the photographic lineup process to C.M. because she seemed extremely nervous. *Id.* at Pg. ID 64. For example, he told her that if she saw a photograph that she

recognized, she should focus on that photograph as well as the number associated with that photograph. *Id.*

On collateral review, the trial court addressed Petitioner claim that the prosecutor failed to turn over exculpatory evidence and knowingly presented false testimony when she allowed C.M. to testify she had seen the perpetrator's face during the assault. The trial court found no violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), because C.M.'s statement to the prosecutor occurred after Petitioner was convicted and sentenced and there was no indication that the prosecution was aware of the potential for perjury until well after the trial. *See* 3/9/12 Op. & Ord. at 3, ECF No. 12-16, Pg. ID 916. The trial court also held that C.M.'s later clarification to the investigator – that she was not influenced by Officer Ortiz nor did she meet with him prior to the photographic lineup and that she would have selected Petitioner photograph without regard to any remarks from Officer Ortiz – sufficiently rebutted Petitioner's accusations of fraudulent testimony. *Id.* Moreover, the trial court also held that Mullins' statement was bolstered by the DNA evidence which linked him to the assault on C.M. *Id.*

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, 567 U.S. 37, 44 (2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.,* quoting *Donnelly v. DeChristoforo*, 416 U.S.

637, 643 (1974). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 567 U.S. at 47, quoting *Harrington*, 562 U.S. at 103. To establish prosecutorial misconduct in the context of presenting false testimony, a petitioner must show: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. *Brooks v. Tenn.*, 626 F.3d 878, 894-95 (6th Cir. 2010).

On habeas review, this Court does not determine whether this Court would have reached the same conclusion. Instead, the Court considers whether the trial court's decision was so lacking in justification as to constitute a denial of due process. The trial court's conclusion that C.M.'s statement to the investigator alleviated the concern that her trial testimony was perjured was a reasonable one. Her explanation coupled with Officer Ortiz's statement to the investigator, the strong DNA evidence, and the consistency of the other victims' stories support the trial court's conclusion that C.M.'s testimony was not fraudulent. In addition, the trial court correctly held that the prosecutor did not violate *Brady* by withholding exculpatory evidence because there is no indication that the content of C.M.'s post-trial statement to the prosecutor was known to the prosecutor before the trial. Habeas corpus relief is denied on this claim.

## V. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## VI. Conclusion

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED. Furthermore, the Court DENIES a certificate of appealability. The Court finds Petitioner may proceed on appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

S/Arthur J. Tarnow
Arthur J. Tarnow
Dated: January 9, 2017     United States District Judge

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on January 9, 2017, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant